IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHERYL CRUMMETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:06-cv-1450 (HHK) |
| ) | |
| METROPOLITAN LIFE ) | |
| INSURANCE COMPANY, *et al.,* ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR PROTECTIVE ORDER TO LIMIT THE SCOPE OF
DISCOVERY AND FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Cheryl Crummett ("Plaintiff") hereby submits this Memorandum in Opposition to Defendants Metropolitan Life Insurance Company's ("Met Life"), the Bureau of National Affairs Long Term Disability Group Policy's (the "Plan") and the Bureau of National Affairs, Inc.'s ("BNA") (collectively "Defendants") Motion for Protective Order and for Judgment on the Pleadings (the "Motion" or "Def. Mot.").

**Introduction**

In this action, Plaintiff has asserted a claim for disability benefits under Section 502(a)(1)(B) of ERISA, as well as a claim for breach of fiduciary duty under Section 502(a)(3) of ERISA. Defendants have moved for judgment on the pleadings as to the latter claim, arguing that the law clearly provides that plaintiffs in ERISA cases may not simultaneously pursue a claim for breach of fiduciary duty and a claim for disability benefits. Contrary to Defendants assertions, the answer to this question is far from clear, and the courts are split on this issue. As shown below, there is ample authority to support Plaintiff's right to pursue both claims, at least at this early stage of the litigation.

1

Defendants have also moved for a protective order in this case to prevent Plaintiff from obtaining any discovery. The discovery Plaintiff seeks to serve upon Defendants at this early stage of the litigation relates to Plaintiff's claim under Section 502(a)(1)(B) of ERISA and is narrowly tailored to determine, among other things (1) the existence and extent of Met Life's conflict of interest with respect to its consideration and handling of Plaintiff's claim for disability benefits, and (2) the full extent of the procedural irregularities, bias and unfairness in Defendant's review of Plaintiff's claim for disability benefits that are readily apparent from the administrative record in this case. It is essential for Plaintiff – and the Court – to determine the extent of the aforementioned conflicts and deficiencies in Defendant's processing of Plaintiff's claim for disability benefits in order to ascertain the appropriate standard of review to apply to Plaintiff's claim under Section 502(a)(1)(B). Depending upon the standard of review ultimately applied, the Court may consider materials outside the administrative record in reviewing Defendant's denial of Plaintiff's claim for disability benefits. And, as shown below, it is axiomatic that Plaintiff is entitled to discovery on her claim for breach of fiduciary duty brought pursuant to Section 502(a)(3), independent of whether or not the Court grants her the right to discovery under Section 502(a)(1)(B).

**Background and Procedural Posture**

The Plan is an employee welfare benefit plan within the meaning of section 3(1) and (3) of ERISA. Complaint at 5. Met Life is the designated claims administrator of the Plan, has discretion and authority to make initial and final determinations under the Plan and, therefore, is a fiduciary with respect to the Plan within the meaning of section 3(21) of ERISA. Complaint at 6. BNA is the designated "Plan Administrator," and is the

"Plan Sponsor," of the Plan within the meaning of section 3(16)(A) and (B) of ERISA, and therefore is a fiduciary with respect to the Plan within the meaning of section 3(21) of ERISA. Complaint at 7.

By virtue of her status as an employee of BNA, Plaintiff was eligible to participate in the Plan. Complaint at 8. As relevant here, the Plan defines "Disabled" and/or "Disability" to mean that:

> [D]ue to sickness … you are receiving Appropriate Care and Treatment and complying with the requirements of such treatment; and you are unable to earn … during the Elimination Period and the next 24 months of Sickness or accidental injury, more than 80% of Your Predisability Earnings at Your Own Occupation from any employer in Your Local Economy….

The Plan defines "Sickness" to mean "illness, disease or pregnancy, including complications from pregnancy." Complaint at 9. During her employment with the Company, Plaintiff became eligible for long term disability benefits under the Plan due to a serious illness and disease. Plaintiff applied for benefits under the Plan in late 2005. Complaint at 11.

By letter dated February 20, 2006, MetLife denied Plaintiff's claim for benefits under the Plan. In its February 20, 2006 letter, MetLife noted that, in order to grant benefits, it would require medical documentation from December 9, 2005 through March 8, 2006. Complaint at 12. Plaintiff subsequently provided MetLife with the aforementioned medical documentation. Complaint at 13. By letter dated April 7, 2006, MetLife once again denied Plaintiff's claim for benefits under the Plan. In its April 7, 2006 letter MetLife asserted that, although Plaintiff had previously been diagnosed with fibromyalgia, its was denying her claim because there allegedly was no medical documentation provided to indicate that Plaintiff was currently receiving treatment for

3

fibromyalgia.  In its letter, MetLife also asserted that "although you have fibromyalgia, there is no clinical evidence to support you are prevented from performing the functional duties of your sedentary job as an account executive."  Finally, MetLife noted that Plaintiff had the right to appeal this decision and could send additional medical documentation to perfect her claim.  Complaint at 14.

   Plaintiff subsequently appealed MetLife's further denial of her claim and submitted the aforementioned medical documentation to MetLife.  In support of her appeal, Plaintiff included a letter from one of her attending physicians, Dr. Norman W. Levin, that explicitly stated that Plaintiff suffered from "Fibromyalgia [and] Chronic Fatigue Syndrome" (among other conditions) that caused Plaintiff to be "unable to work at her current or any other job because of severe pain, fatigue and cognitive dysfunction." Plaintiff also submitted a new medical report from Dr. Levin that specifically diagnosed Plaintiff with Fibromyalgia and Malaise & Fatigue (CFIDS), that specifically noted that Dr. Levin had advised Plaintiff that she should not return to work with BNA because of these illnesses.  Plaintiff also submitted a medical report from Dr. Mayo F. Friedlis and Maggie Blouse (PA-C) that specifically noted that Plaintiff had, among other conditions, the following:  sacroiliac joint dysfunction, bilateral sacroilitis, cervical facet spondylosis, myofascial pain/fibromyalgia, chronic fatigue syndrome.  This report also noted that Plaintiff "is disabled from any work at this time primarily due to her lower back pain."  The report from Dr. Frielis and Ms. Blose also specifically noted that Plaintiff suffered from gait dysfunction.  Complaint at 15. In support of her appeal, Plaintiff also noted her willingness to submit to an Independent Medical Examination

4

("IME") by a physician chosen by MetLife.  MetLife never asked Plaintiff to submit to the IME.  Complaint at 16.

By letter dated July 14, 2006, MetLife denied Plaintiff's appeal of the denial of her claim for disability benefits.  The July 14, 2006 letter made no mention of Dr. Levin's notes/reports and finding that Plaintiff was disabled from working in any capacity due to fibromyalgia.  The July 14, 2006 letter also noted that the denial of the appeal was based, in part, on the fact that Plaintiff's "gait is consistently documented as normal." Complaint at 17.  It is clear from MetLife's July 14, 2006 letter that MetLife relied upon evidence selectively chosen.  Specifically, it is clear from the letter that the MetLife failed to consider any of the medical documentation submitted by Plaintiff on appeal.  Even the most cursory review of this information would have made clear that Plaintiff's rheumatologist and other attending physicians had specifically noted that Plaintiff was unable to work in any occupation due to her fibromyalgia – and there was absolutely no evidence in the record to the contrary.  It is also clear from the letter that MetLife and its consulting physicians ignored the medical documentation submitted by Plaintiff because that documentation clearly stated - contrary to MetLife's assertion – that Plaintiff's gait was dysfunctional.  Complaint at 18.

Plaintiff filed her two-count Complaint against Defendant on August 17, 2006.  At Count I, Plaintiff states a claim for disability benefits under Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B).  Complaint at 19-24.  At Count II Complaint, Plaintiff states claims for breach of fiduciary duty under ERISA §§ 404(a)(1)(D) and 502(a)(3), 29 U.S.C. §§ 1104(a)(1)(D) and 1132(a)(3).  Complaint at 25-30.  Plaintiff served Defendants with limited discovery requests in mid-December 2006.  *See* Exhibit 1 to Def. Mot.  By the

instant Motion, Defendants have moved for judgment on the pleadings as to Count II of the Complaint and for a protective order from the Court with regard to Plaintiff's discovery requests.

### Argument

**I.    Plaintiff May Maintain Claims Under Both 502(a)(1)(B) and 502(a)(3)**

Defendants have argued that Plaintiff's claim for breach of fiduciary duty at Count II of the Complaint should be dismissed under *Varity Corp. v. Howe*, 516 U.S. 489 (1996). In that case, the Supreme Court commented that if Congress provided Plaintiff's with an adequate remedy for their injuries elsewhere in ERISA, then there likely would be no need for further equitable relief, in which such case such relief would normally not be "appropriate" under Section 502(a)(3). Defendant has alleged that because Plaintiff possesses a claim for benefits under Section 502(a)(1)(B), she has an adequate remedy and her claim under Section 502(a)(3) must be dismissed. However, as set forth below, the federal courts are divided on this issue and the answer to this question is not as simple as Defendants would have the Court believe.

Plaintiff does not dispute Defendants' contention that some federal courts have held that a plaintiff is not entitled to maintain a claim for breach of fiduciary duty where he or she also has available a claim for benefits – and Plaintiff would refer the Court to the cases cited in Defendants' motion that support Defendants' contention. *See* Def. Mot. at 7-8 (citing cases).[1]  Plaintiff does dispute, however, that she is barred from maintaining

---

[1]   Plaintiff would note, however, that Defendants' reliance on *Hurley v. Life Ins. Co. of North America, et al.*, 2005 U.S. Dist. LEXIS 43038 (D.D.C. 2005) is misplaced, as that case is distinguishable from the present case. *Hurley* involved claims brought pursuant to ERISA Sections 502(a)(1)(B) and *502(a)(2)*. In contrast here, Plaintiff has brought claims under Sections 502(a)(1)(B) and *502(a)(3)* of ERISA. The District Court in *Hurley* did *not* hold that a Plaintiff could not maintain a claim under Sections 502(a)(1)(B) and 502(a)(3). Rather the District Court found that the plaintiff could not maintain the fiduciary breach claim under *502(a)(2)*, as well as his claim for benefits. *See Hurley*, 2005 U.S. Dist.

6

a breach of fiduciary duty claim in this case, as many federal courts have held that a plaintiff, such as Ms. Crummett here, may simultaneously bring a claim for benefits under Section 502(a)(1)(B) and a claim for "other appropriate relief" under Section 502(a)(3). *See*, *e.g.*, *Koert v. GE Group Life Assurance Co.*, Case No. 04-cv-5745, 2005 U.S. Dist. LEXIS 14132 (E.D. Pa. July 14, 2005) (granting plaintiff's motion for leave to serve discovery beyond the administrative record and finding that plaintiff could pursue claims under 502(a)(1)(b) and 502(a)(3) simultaneously); *Tannenbaum v. UNUM Life Ins. Co. of Am.*, No. 03-CV-1410, 2004 U.S. Dist. LEXIS 5664, at *14-*15 (E.D. Pa. Feb. 27, 2004) (citing *Varity*); *Doyle v. Nationwide Ins. Cos. & Affiliates Employee Health Care Plan*, 240 F. Supp. 2d 328, 349-50 (E.D. Pa. 2003) (rejecting the view that there is a bright-line rule that a claim for equitable relief under Section 502(a)(3) should be dismissed when a plaintiff also brings a claim under Section 502(a)(1)(B)); *Parente v. Bell Atlantic-PA*, C.A. No. 99-5478, 2000 WL 419981, at * 4 (E.D. Pa. April 18, 2000) (permitting plaintiff to proceed under both 502(a)(1)(B) and (a)(3) until it can be determined whether Section 502(a)(1)(B) in fact provides plaintiff appropriate relief from her injuries); *Nicolaysen v. BP Amoco Chemical Co.*, C.A. No. 01-CV-5465, 2002 U.S. Dist. LEXIS 9325 (E.D. Pa. May 23, 2003); *Goepfort v. Trustmark Ins. Co.*, Case No. 05C1132, 2006 U.S. Dist. LEXIS 64779 (E.D. Wisc. Sept. 11, 2006) ("a district court generally should not dismiss a [502(a)(3)] claim as duplicative of a claim for benefits at the motion to dismiss stage of a case. This is so because: (1) it may be difficult to determine at the pleading stage of a case whether relief is available under [Section

---

LEXIS at *32. The District Court also found that the plaintiff was not entitled to the individualized relief he sought under Section 502(a)(2), as relief under Section 502(a)(2) must inure to the benefit of an ERISA benefit plan and not to an individual (whereas under Section 502(a)(3), a plaintiff such as Ms. Crummet here may seek individualized, equitable relief). *Id*.

7

502(a)(3)]; (2) some allegations might support a claim under [Section 502(a)(1)(B)] and others a claim under [Section 502(a)(3)]; (3) *Varity Corp.* did not deal with pleading but with relief; and (4) federal pleading rules allow a plaintiff to plead claims hypothetically or alternatively"); *Black v. Long Term Disability Ins.*, 373 F. Supp. 2d 897, 902 (E.D. Wis. 2005) (same).

These decisions focus on the Supreme Court's equivocal language in *Varity*, which does not draw an absolute bright-line rule excluding claims for relief under Section 502(a)(3) if a claim is also asserted under Section 502(a)(1)(B). These courts also cite the fundamental fairness of permitting parties to plead in the alternative, as explicitly allowed by Rule 8 of the Federal Rules of Civil Procedure.[2]  *See*, *e.g.*¸ *Nicolaysen*, 2002 U.S. Dist. LEXIS at *7.  *See also* 02/03/2005 Order of Hon. Patrice B. Tucker in *LaMonte v. Nationwide Mut. Ins. Co.*, Civ. A. No. 04-2293 (attached hereto as Exhibit 1) at n.1. These courts have made very clear that, at a minimum, plaintiffs may pursue both avenues of relief at this very early stage of the litigation:

> Under the circumstances of this case, we conclude that at this juncture, consistent with *Varity*, Plaintiff can simultaneously seek benefits under § 1132(a)(1)(B) and "other appropriate relief" under § 1132(a)(3)(b). At this stage, we cannot know whether Plaintiff will be able to prove his

---

[2] Alternative pleading is encouraged by the Federal Rules of Civil Procedure. Rule 8(e) of the Federal Rules states, in pertinent part, that:

> A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds.

Fed. R. Civ. P. 8(e)(2). As noted above, at this early stage in the litigation, Plaintiff should be permitted to pursue relief both under Section 502(a)(1)(B) and 502(a)(3) ERISA because it is clear from the face of the Complaint that she can state claims under both sections of ERISA. *See* 02/03/2005 Order of Hon. Patrice B. Tucker in *LaMonte v. Nationwide Mut. Ins. Co.*, Civ. A. No. 04-2293 (attached hereto as Exhibit 1) at n.1 (citing cases).

8

> entitlement to benefits under § 1132(a)(1)(B). If it is later apparent that Plaintiff is ineligible to pursue a claim for benefits under § 1132(a)(1)(B), then Plaintiff's only remedy may be to pursue his claim for breach of fiduciary duty and seek "other appropriate relief" under the catchall remedial section, § 1132(a)(3)(B). Therefore, Plaintiff will be permitted to maintain his claim under § 1132(a)(3)(B).

*Tannenbaum*, 2004 U.S. Dist. LEXIS 5664 at *14-*15. *See also Fox v. PNC Financial Serv. Group, Inc.*, No. 04-cv-58, 2006 U.S. Dist. LEXIS 15809 (E.D. Pa. Apr. 3, 2006) (stating that in *Varity*, the Supreme Court held that plaintiffs may simultaneously seek relief under both ERISA §§ 502(a)(1)(B) and 502(a)(3)(B) where the claim for equitable relief is appropriate" and that "having considered Plaintiff's claim for legal relief and determined that no such relief is available to Plaintiff pursuant to ERISA § 502(a)(1)(B), the court concludes that under the circumstances it is appropriate to consider Plaintiff's claim for equitable relief under ERISA § 502(a)(3)").

The Second Circuit's decision in *Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76 (2d Cir. 2001) is particularly instructive:

> Finally, we disagree with Empire's contention that "there is no private action for breach of fiduciary duty under ERISA when another remedy is available under [Section 502(a)(1)(B)]." Plaintiffs' cause of action for their breach of fiduciary duty claims arises from ERISA § 502(a)(3), which allows plan participants, beneficiaries or fiduciaries to bring a civil action "to enjoin any act or practice which violates any provision of this subchapter or terms of the plan, or . . . obtain other appropriate equitable relief." In *Varity Corp.*, the Supreme Court held that such claims alleging breach of fiduciary duty could be brought by individual plaintiffs because ERISA § 502(a)(3) "acts as a safety net, offering appropriate equitable relief for injuries caused by [ERISA] violations that § 502 does not elsewhere adequately remedy." The Supreme Court further noted that, given ERISA's requirement that fiduciaries act "solely in the interest of the participants and beneficiaries, it is hard to imagine why Congress would want to immunize breaches of fiduciary obligation that harm individuals by denying injured beneficiaries a remedy." We note that should plaintiffs' claim under ERISA § 502(a)(1)(B), to enforce their rights under the plan fail, plaintiffs' breach of fiduciary duty claim is their only remaining remedy. *Varity Corp.* clearly provides that, where a plan

9

> participant has no remedy under another section of ERISA, she can assert a claim for breach of fiduciary duty under § 502(a)(3).
>
> *Varity Corp.* further explained, however, that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" The Supreme Court in *Varity Corp.* did not eliminate the possibility of a plaintiff successfully asserting a claim under both § 502(a)(1)(B), to enforce the terms of a plan, and § 502 (a)(3) for breach of fiduciary duty; instead, the Court indicated that equitable relief under § 502(a)(3) would "normally" not be appropriate. Ultimately, we believe that the determination of "appropriate equitable relief" rests with the district court should plaintiffs succeed on both claims. This determination must be based on ERISA policy and the "special nature and purpose of employee benefit plans." We therefore hold that *Varity Corp.* did not eliminate a private cause of action for breach of fiduciary duty when another potential remedy is available; instead, the district court's remedy is limited to such equitable relief as is considered appropriate. If the plaintiffs ultimately prevail on this claim upon remand, the district court must then fashion appropriate relief.

Devlin, 274 F.3d at 89-90 (internal citations omitted).[3]

Here, Defendant has asserted that Plaintiff is not entitled to any benefits under Section 502(a)(1)(B). If Defendant is able to demonstrate at a later point in the litigation that Plaintiff is ineligible to pursue her claim under Section 502(a)(1)(B), then Plaintiff's only remedy would be to pursue her claim under Section 502(a)(3)'s catch-all provision. However, as shown above, until Defendant has made such a showing and the Court has made such a determination, there is ample support in the case law for the Court to permit Plaintiff's claims under Section 502(a)(3) to go forward.

## II. Plaintiff is Entitled to Discovery Beyond the Administrative Record

Defendants set forth two arguments in support of their request for a protective order. First, Defendants assert that Plaintiff is not entitled to discovery beyond the administrative

---

[3] Even *Korotynska v. Metropolitan Life Ins. Co.*, 2006 U.S. App. LEXIS 30535, *13 (4th Cir. 2006), upon which Defendants' place great reliance, has recognized the existence and validity of the Second Circuit's holding in *Devlin*. Defendants conveniently fail to bring this fact to the Court's attention, instead choosing to leave out the language of *Korotynska* that is harmful to its argument.

record because the Court should review Met Life's decision under the deferential arbitrary and capricious standard. Def. Mot. at 3. Second, Defendants argue that discovery is not necessary in this case because Plaintiff has alleged that Met Life acted under a conflict of interest. Def. Mot. at 6. In making these arguments, Defendants have put the cart before the horse. As shown below, discovery is necessary to allow the Court to determine what standard of review to apply to Plaintiff's benefit claim, and discovery regarding Met Life's alleged conflict of interest (as well as Met Life's procedural irregularities in handling Plaintiff's claim for disability benefits) is directly relevant to determining the appropriate standard of review.

Defendants place great reliance on Judge Kollar-Kotelly's decision in *Hurley v. Life Ins. Co. of North America*, 2006 U.S. Dist. LEXIS 48835 (D.D.C. July 9, 2006). Defendants' reliance on *Hurley* is surprising, given that the case hurts Defendants' position more than it helps. In *Hurley*, the Court instructed that where, as here, a benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or otherwise construe the terms of the plan, an abuse of discretion standard typically applies. *Hurley*, 2006 U.S. Dist. LEXIS 48835 at *9 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). The Court further instructed that the "standard of review may also be affected by a conflict of interest, which occurs when the insurance administrator is responsible both for deciding whether the grant claims and paying the benefits." *Id.* (citing *Firestone*, 489 U.S. at 115). The Court noted that:

> The circuits have adopted different methods for applying the standard of review in conflict of interest cases. *Hamilton v. AIG Life Ins. Co.*, 182 F. Supp.2d 39, 44 n.3 (D.D.C. 2002). Some circuits adopt a sliding scale approach, "where the level of deference shown to the insurance company decreases in proportion to the evidence of a conflict." *Id.* (citing *Pinto v. Reliance Std. Life. Ins. Co.*, 214 F.3d 377, 392 (3d Cir. 2000)). Other

11

> circuits follow a burden-shifting approach, which is to presume the administrator's decision as arbitrary and capricious unless the administrator demonstrates that its decision was correct under *de novo* review, or that the conflict of interest did not influence the administrator's decision. *Id.* (citing *Brown v. Blue Cross & Blue Shield*, 898 F.2d 1556, 1566-67 (11th Cir. 1990)). Finally, some circuits have refused to apply any form of heightened review without evidence of an actual conflict of interest, but will apply the *de novo* standard once the plaintiff shows that a conflict influenced the administrator's decision. *Id.* (citing *Sullivan v. LTV Aerospace & Def. Co.*, 82 F.3d 1251, 1255-56 (2nd Cir. 1996)). The D.C. Circuit has not yet addressed this issue.

*Hurley*, 2006 U.S. Dist. LEXIS 48835 at *8-9.

The Court then went on to state that courts within this jurisdiction have allowed discovery in order to determine whether a conflict of interest exists because "information regarding a potential conflict of interest will be relevant to the trial court's determination of the applicable standard of review." *Id.* at 9-10 (citing *Pulliam v. Cont'l Cas. Co.*, No. Civ. A 02-370 (RWR/AK), 2003 U.S. Dist. LEXIS 10010 (D.D.C. Feb. 27, 2003)). The Court then found that, in the case before it, the plaintiff had argued that the insurance company defendant had a conflict of interest, and therefore the Court should allow discovery on the conflict of interest issue to determine which standard of review should apply. *Id.* at 10. However, the Court noted, the defendants had stipulated that *de novo review* was appropriate, and the plaintiff had subsequently discarded its request for discovery regarding a potential conflict of interest. *Id.* Accordingly, the issue of discovery for the purposes of determining the standard of review was moot, and the Court adopted a *de novo* review in light of the potential conflict of interest. *Id.* (citing cases).

Unlike the defendants in *Hurley*, the Defendants here have neither stipulated to the existence of a conflict of interest nor stipulated to a *de novo* standard of review. Rather, Defendants here have argued that the highly deferential arbitrary and capricious standard of

review should apply (*see* Def. Mot. at 3) and have asserted that Plaintiff is not entitled to discovery because she has *alleged* an impermissible conflict of interest (*see* Def. Mot. at 6). Defendants cannot have it both ways. Plaintiff has alleged/argued that Met Life had a conflict of interest and Plaintiff now seeks discovery on the conflict of interest issue to allow the Court to determine which standard of review should apply. Accordingly, under this Court's precedent – *as cited by Defendants in their Motion* – Plaintiff is entitled to discovery on these issues (unless, of course, Defendants voluntarily stipulate to the existence of the conflict and to the application of the *de novo* standard of review).

The remaining cases cited by Defendants in support of their request for a protective order are irrelevant and/or inapposite. Defendants cites several cases from this Circuit for the proposition that "where, as here, a deferential standard of review applies, 'the weight of the authority clearly limits the evidence to the facts before the claim administrator or fiduciary at the time the benefits decision was made.'" Def. Mot. at 3 (citing cases). Once again, Defendants have put the cart before the horse because, as noted above, limited discovery is necessary to allow Plaintiff and the Court to determine what standard of review to apply. Contrary to Defendants' bare assertion, this Court routinely allows discovery to assist the Court in determining the proper standard of review:

> The parties disagree as to the standard of review applicable to this case and there is no relevant authority from the D.C. Circuit. However, there is ample authority from other circuits in which courts consider evidence of a conflict of interest in determining the appropriate standard of review. The standard of review to apply in this case is, of course, a question for the trial court to answer. However, discovery on this issue is proper, including discovery into the possibility that Continental was operating under a conflict of interest because the existence of a conflict of interest will affect the standard of review to be applied. Information regarding a potential conflict of interest will be relevant to the trial court's determination of the applicable standard of review. This Court concludes that the possibility that Continental had a conflict of interest is relevant to the case and a

> proper subject of inquiry during discovery. In addition, Plaintiff persuasively argues that evidence of inconsistent claims handling or failure to follow claims procedures may be evidence of a conflict of interest. Therefore, Plaintiff may inquire into Continental's general policies and procedures for handling claims and into the handling of Plaintiff's claim in particular.

*Pulliam*, 2003 U.S. Dist. LEXIS 10010 at *6-8 (internal citations omitted). As *Pulliam* and *Hurley* both make clear, unless and until Defendants stipulate to *de novo* (or a similar less deferential) standard of review and to the existence of a conflict of interest, discovery is necessary on these issues.

Defendants have also argued that Plaintiff should be denied discovery because her discovery requests (attached as Exhibit 1 to the Def. Mot.) are allegedly overbroad. For example, Defendants assert that Plaintiff is not entitled to any discovery regarding the identity of the individuals charged with making determinations on Plaintiff's disability benefits claim and certain information regarding the benefit claims of other Plan participants. *See* Def. Mot. at 4-5. Plaintiff seeks this discovery because of the readily apparent procedural irregularities involved in Defendants' handling of her benefits claim. Specifically, Plaintiff has alleged – and the evidence already in the administrative record appears to support – that there is evidence of inconsistent claims handling, evidence of a failure by Defendants to follow proper claims procedures, and evidence of a failure by Defendants to consider relevant medical information submitted by Plaintiff and her physicians. *See*, *e.g.*, Complaint at 18, 23 and 24. The case law in this Circuit makes clear that evidence of inconsistent claims handling or failure to follow claims procedures may be evidence of a conflict of interest and is therefore discoverable at this early stage of the litigation. *See*, *e.g.*, *Pulliam*, 2003 U.S. Dist. LEXIS 10010 at *8. Finally, contrary to Defendants' assertion, Plaintiff's discovery is far from overreaching. The requests are

14

narrowly tailored to the issues of the existence and extent of Defendants' apparent conflict of interest and Defendants' procedural irregularities in handling Plaintiff's disability benefits claim. This Court has previously allowed such discovery in similar circumstances. *See id*. In any event, to the extent that Plaintiff's discovery requests may be overbroad, Plaintiff is certainly willing (as her counsel has repeatedly expressed to Defendants' counsel both in writing and over the phone) to discuss a narrowing of the requests.

Finally, Plaintiff notes that her claim at Count II of the Complaint for fiduciary breach under Section 502(a)(3) is currently pending, and, unlike a claim brought pursuant to Section 502(a)(1)(B), there is no notion or practice limiting discovery in claims brought pursuant to Section 502(a)(3). Accordingly, Plaintiff is free to pursue discovery on this claim.

## **Conclusion**

For the foregoing reasons, Defendant's Motion for Protective Order and for Judgment on the Pleadings should be denied.[4]

---

[4] Plaintiff must respond to Defendants' continuing threatening of sanctions and request for costs and reasonable attorneys' fees in briefing the issues discussed in the Motion. *See* Def. Mot. at 8. This is the third time that Defendants' counsel has threatened sanctions against Plaintiff's counsel if Plaintiff did not agree to voluntarily withdraw the fiduciary breach claim and discovery requests that are the subject of the Motion. Defense counsels' continuing threats are a clear attempt to bully Plaintiff's counsel – a small civil rights law firm – and gain an advantage in this litigation. Such threats are potentially in violation of Rule 8.4(g) of the District of Columbia Rules of Professional Conduct. *See* D.C. Bar Legal Ethics Committee Ethics Opinion 220. In any event, Plaintiff would respectfully request that the Court instruct Defendants to refrain from such idle threats in the future.

Dated: January 22, 2007					Respectfully submitted,


							*//s//  Jason H. Ehrenberg*
							_____
							Jason H. Ehrenberg
							BAILEY & EHRENBERG PLLC
							1155 Connecticut Avenue NW
							Suite 1100
							Washington, D.C. 20036
							T:  (202) 465-4729
							F:  (202) 318-7071
							E:  jhe@becounsel.com

							**Attorneys for Plaintiff**

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 22nd day of January 2007, a copy of the foregoing was served on the following via the District Court's ECF electronic filing system:

Ronda B. Esaw
McGuireWoods LLP
1750 Tysons Boulevard
Suite 1800
McLean, VA  22102

                                        *//s// Jason H. Ehrenberg*
                                        _____
                                        Jason H. Ehrenberg